# In the United States District Court for the Southern District of Georgia Brunswick Division

DWIGHT E. JORDAN,

Plaintiff,

v.

CITY OF DARIEN, BONITA CALDWELL, CHIEF DONNIE HOWARD, OFFICERS ROUNDTREE, DAVIS, and BROWN,

Defendants.

CV 215-49

## ORDER

Pending before the Court are multiple motions filed by all parties. First, is Defendants Police Chief Donnie Howard's ("Chief Howard"), Officers Davis', Officer Brown's and the City of Darien's Motion for Summary Judgment (Dkt. No. 73). Second, is Defendant Officer Roundtree's Motion for Summary Judgment (Dkt. No. 74). Third, is Defendant Bonita Caldwell's ("Caldwell") Motion for Summary Judgment (Dkt. No. 75). Fourth, is Plaintiff Dwight E. Jordan's ("Plaintiff") Motion for Partial Summary Judgment (Dkt. No. 77). Oral argument regarding these motions was held before this Court on September 19, 2016. The motions have been fully briefed and are ripe for decision. For

the reasons stated below, the Defendants' Motions (Dkt. Nos. 73, 74, 75) are **GRANTED,** and Plaintiff's Motion (Dkt. No. 77) is **DENIED.**

**FACTUAL BACKGROUND**

**A. The Board Meeting**

On April 18, 2013, the McIntosh County Board of Education (the "Board") met in Darien, Georgia. Dkt. 77 pp. 2. Plaintiff and Caldwell were both members of the Board. Id. pp. 2-3. Plaintiff served as the Board's only African-American member and had been on the Board for fifteen years. Dkt. 77-3 at 13:25-15:12. Caldwell was the Board's chairwoman. Dkt. 74-5 at 3:9-12. During the meeting, tensions began to mount as Plaintiff vigorously discussed an issue regarding school uniforms in the district. Dkt. No. 77-14 at 1:40:00. When a matter was brought up that Plaintiff believed he had already addressed, Plaintiff said "I could have sworn I said that, yo hablo usted espanol or ingles? Ooooh ok." Id. at 1:40:13. When the confrontation began to de-escalate, Plaintiff said "Ok, meanwhile back at the ranch," to which Caldwell replied "with the horses." Id. at 77-14 at 1:40:50. Plaintiff responded, "with the manure too, it's all around." Id. at 1:40:50. A fellow Board member interjected, encouraging Plaintiff to "stick" to Board issues. Id. at 1:40:57. Plaintiff then yelled, "Let's stick to the meeting?! Why don't you check [Caldwell]! Check [Caldwell]!"

O 72A
(Rev. 8/82)

Id. at 1:41:05. Caldwell then questioned Plaintiff's professionalism, to which Plaintiff responded by pointing his finger and saying, "You've been unprofessional since you came on the board, you came on the board for the purpose of being vindictive!" Id. 77-14 at 1:41:10.

A shouting match between the two immediately followed in which both Plaintiff and Caldwell threatened to "turn" each other "in to the state." Id. at 1:41:30. Plaintiff then accused Caldwell of conspiring against him and yelled accusations that she was a "criminal" and "corrupt." Id. at 1:41:45-1:42:30. Board members began to leave during Plaintiff's statement against Caldwell, until finally the meeting was called into recess. Id. at 1:42:00. At this point, Board members were in the hallways of the building. Plaintiff passed by Caldwell and exclaimed, "You can call the Deals.[1] You can call anybody you want to call." Dkt. No. 67at 57:1-12; Dkt. No. 62 at 16:25-17:8. Plaintiff then exited to the parking lot. This, however, was not the end of the incident.

**B. The Police are Involved**

After the meeting, Board member Larry Day ("Day") called Chief Howard of the Darien Police Department to notify him that no police officers were present at the meeting that night. Dkt. 65 at 17:10-25. Day states that his request was related to

[1] Plaintiff was apparently referencing the Govenor of Georgia, Nathan Deal, and his family.

AO 72A (Rev. 8/82)

school security and not Plaintiff's behavior. Id. Chief Howard, in turn, called Officer Davis and told him to report to the Board. Dkt. 66 at 31:21-23. Officer Davis was routinely present at Board meetings for security purposes and had known Plaintiff prior to the incident. Dkt. No. 47 pp. 10-12. Officer Brown overheard on his police radio that Officer Davis was going to the Board meeting and decided to join him. Dkt. No. 61 at 12:17-22.

Officer Davis was already at the scene when Plaintiff exited the building. Dkt. No. 67 at 46:4-9. A video recording of the activities shows Plaintiff's behavior. As Davis reports, Plaintiff appears to be animated as he continued his confrontation with Board members. Dkt. No. 65 at 17:10-25. When the police arrived, Plaintiff continued to behave as such. Plaintiff cursed during his confrontation with Officer Davis, who in turn told him to stop cursing. Id. at 63:8-22. Shortly thereafter, Officer Brown arrived. Id. at 60:12-61:21. Officer Davis told Plaintiff that he needed to leave the premises or he would be arrested. Plaintiff asked if he could re-enter the building to collect his belongings. Id. at 61:9-19. Plaintiff then re-entered the building. Id. at 0:30. Plaintiff continued to protest the officers' actions and argue with them in the parking lot. Id. at 1:00-2:00. Plaintiff briefly approached the officers, continuing to protest their actions. Id. at 3:30.

O 72A
(Rev. 8/82)

Plaintiff then left. His departure, however, did not conclude the matter.

**C. The Investigation**

After the incident occurred, Officer Roundtree was tasked by Chief Howard with investigating Plaintiff's conduct. Dkt. No. 74-15 at 79:25-80:21. Officer Roundtree has no prior relation to Plaintiff, nor to the incident. Dkt. No. 128. Officer Roundtree conducted multiple interviews as part of his month long investigation. First, Officer Roundtree interviewed Caldwell on April 30. Dkt. No. 19 Ex. WWW-1 at 0:25. Caldwell conveyed the events that took place at the Board meeting and indicated Plaintiff was screaming and cursing that night. Id. at 10:00-11:15. Caldwell stated that Plaintiff was "very, very out of control" and had multiple altercations with Officer Davis prior to being asked to leave. Id. at 11:15-13:00. Caldwell stated that Plaintiff was shouting at her, insulting her, and following her around in a way that she feared he would physically attack her. Id. at 32:00-44. Caldwell dispelled the idea that this was normal behavior for Plaintiff, stating "this was a different level." Id. at 33:00-8. When asked what specifically made her afraid, Caldwell said Plaintiff yelled at her and followed her. Id. at 36:00-37:00.

Officer Roundtree next interviewed Day on May 2. Dkt. No. 74-6. Day stated that he had little relationship to either

AO 72A (Rev. 8/82)

Caldwell or Plaintiff. Id. at 4:17-19. Day stated that Plaintiff was cursing loudly outside of the building and had a confrontation with Officer Davis. On May 3, Officer Roundtree interviewed Board member Holly Boone ("Boone"). Dkt. 74-16. Boone indicated that Plaintiff was yelling while police were outside and she could hear him yell, "You act like you've never cursed before and you probably curse all the time," at someone outside. Id. at 23:1-25. Boone indicated Plaintiff was yelling while police were outside. Id. at 23:16-25.

Officer Roundtree also reviewed an incident report compiled by Officer Davis and Officer Brown. Dkt. No. 70 at 84:14-25;85:1-9. Officer Davis indicated that upon his arrival, Plaintiff was yelling to one of the female Board members, "I can say anything I goddamn want." Id. at 75:1-11. The report states that when Officer Davis asked Plaintiff to not use that language, Plaintiff yelled again, "I can say any goddamn thing I want any goddamn time I want." Another officer on the scene reported that when Officer Davis told Plaintiff he should not curse in public, Plaintiff replied, "I don't [sic] a goddamn and you can't do a goddamn thing." Id. at 66:1-4. Officer Roundtree concluded that the record was "debatable" as to whether Plaintiff was yelling at a close proximity to anyone on the scene. Dkt. No. 70 at 372:1-22.

O 72A
(Rev. 8/82)

**D. Officer Roundtree Concludes the Investigation**

On May 22, Officer Roundtree determined there was sufficient probable cause to arrest Plaintiff for disorderly conduct and disrupting a lawful meeting.[2] Dkt. No. 70 at 154:10-24. Officer Roundtree presented a McIntosh County Magistrate Judge, Jean Bolin, with his findings via warrant affidavit and a phone conversation. Dkt. No. 70 at 155:1-25. Officer Roundtree's warrant application concluded that Plaintiff had committed disorderly conduct. Dkt. No. 74-18. Magistrate Judge Bolin found sufficient probable cause of disorderly conduct and approved the arrest warrant. Id. Plaintiff submitted to the McIntosh County Detention Center later that day. He was subsequently released. Ultimately, the disorderly conduct charge was dismissed and Plaintiff brought this action.

**LEGAL STANDARD**

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the

[2] The disrupting a public meeting charge was later rescinded and is not at issue in this case.

"evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257. The nonmovant may satisfy this burden in two ways: First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex, 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence

O 72A
(Rev. 8/82)

sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant instead attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the defendants [is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

## DISCUSSION

### I. Plaintiff's Section 1983 Claims Must Fail

Plaintiff alleges that Defendants committed numerous violations of 42 U.S.C. Section 1983 and 42 U.S.C. Section 1985.[3] See generally Dkt. No. 41. Specifically, Plaintiff alleges violations of his constitutional rights against Officer Davis, Officer Brown, and Officer Roundtree in their individual capacities. Id. at ¶¶ 4-6. Further, Plaintiff sues Chief Howard and Caldwell in both their individual and their official capacities on similar grounds, as well as the City of Darien. Id. at ¶¶ 7-8, 76.

Officer Brown, Officer Davis, Officer Roundtree, and Chief Howard have asserted qualified immunity. "That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities."

[3] Plaintiff's claim under the Open Meetings Act was dismissed at Oral Argument on September 19, 2016. Plaintiff provided no argument which would satisfy a claim under that statute. Dkt. No. 128.

AO 72A
(Rev. 8/82)

Lassiter v. Alabama A & M Univ., Bd. of Trs., 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc) (citations and emphasis omitted). To determine if qualified immunity applies, the Court considers (1) whether the plaintiff alleged facts to establish that the officers violated a constitutional right; and (2) whether that right was clearly established. Pearson v. Callahan, 555 U.S. 223, 232 (2009). The Eleventh Circuit has determined that qualified immunity in the disorderly conduct context is determined by whether "arguable" probable cause existed for the arrest. Redd v. City of Enterprise, 140 F.3d 1378, 1383 (11th Cir. 1998); Fish v. Brown, 2016 WL 5746264, No. 15-12348, at *9 (11th Cir. Oct. 3, 2016).

Plaintiff alleges violations of both his Fourth and First Amendment rights stemming from his allegedly unconstitutional arrest. An arrest without probable cause violates the Fourth Amendment and provides the basis for a Section 1983 claim. Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996). Further, an arrest in retaliation for exercising one's First Amendment rights may provide a basis for a Section 1983 claim. See Redd, 140 F.3d at 1383.

The existence of probable cause, however, is an absolute bar to both claims. Ortega, 85 F.3d at 1525; Redd, 140 F.3d at 1383. Further, Plaintiff's claims under Section 1985 must also be dismissed if no denial of his constitutional rights occurred.

O 72A
(Rev. 8/82)

See 42 U.S.C. § 1985. Therefore, the issue of whether the officers had arguable probable cause to arrest Plaintiff is dispositive of this matter.

**A. Plaintiff's Claims Against Brown and Davis Must Fail**

Plaintiff alleges Section 1983 claims against Officer Davis and Officer Brown. Dkt. No. 1 ¶¶ 4-5. Plaintiff argues that he was seized when Officer Brown and Officer Davis forced him to leave the Board meeting. Dkt. No. 102-1 p. 12. Video footage of the alleged seizure reflects that Plaintiff was forced to leave under threat of arrest. However, Plaintiff was never physically restrained, was never physically prevented from re-entering the Board meeting, and was allowed to gather his belongings before leaving. Dkt. No. 67 at 63:8-22. The question before the Court, then, is whether the officers violated a clearly established right when they ordered Plaintiff to leave the Board meeting.

A seizure does not occur when a reasonable plaintiff would believe he is free to leave the area. O'Boyle v. Thrasher, 638 F. App'x. 873, 878 (11th Cir. 2016). In O'Boyle, the plaintiff attempted to obtain public records from the town hall on multiple occasions. Id. at 875. A confrontation with police quickly began. Id. The plaintiff was "grabbed," "shoved," and told that he would be arrested if he did not immediately leave the building. Id. The Eleventh Circuit held that this did not

AO 72A
(Rev. 8/82)

amount to a seizure because the plaintiff should have known at all times that he was free to leave. Id.

Plaintiff relies heavily on a sister court's ruling in Tisdale v. Gravitt to establish that a seizure occurs whenever a citizen is forced to leave an area by the police. 51 F. Supp. 3d 1378, 1385-86, 1396-97 (N.D. Ga. 2014). Unlike in O'Boyle, however, the plaintiff in Tisdale was not free to leave and instead was "escorted" by police to the back of the room. Id. at 1396-97. Specifically, a genuine issue of material fact existed regarding whether a reasonable person would have felt free to "terminate the encounter" with police. Id. Here, nothing in the record suggests Plaintiff was not free to leave the area. To the contrary, he was not permitted to stay. No physical force was used in his removal, and Plaintiff was free to re-enter the Board meeting to obtain his belongings.

Regardless, Officer Brown and Officer Davis need only establish that the law is unclear to be entitled to qualified immunity. West v. Davis, 767 F.3d 1063, 1068 (11th Cir. 2014). Specifically, it is Plaintiff's burden to show that the law is so clear that Officers Brown and Davis had "fair notice" that they were seizing Plaintiff and violating his constitutional rights when they forced him to leave. Id. A review of the relevant case law in this jurisdiction provides no such notice. See O'Boyle, 638 F. App'x. at 878. Thus, Plaintiff's Section

AO 72A
(Rev. 8/82)

1983 claims fail against Officer Brown and Officer Davis because they did not violate any clearly established right. Pearson, 555 U.S. at 232.

**B. Plaintiff's Section 1983 Claims Against Officer Roundtree Chief Howard and the City of Darien Must Fail**

Plaintiff also alleges a Section 1983 action against Officer Roundtree. It is undisputed that Officer Roundtree arrested Plaintiff on May 22, 2013. Dkt. 74-18. Therefore, the Court considers whether Officer Roundtree had arguable probable cause to arrest Plaintiff for disorderly conduct. The Court determines arguable probable cause by considering whether a "reasonable officer[] in the same circumstances and possessing the same knowledge as [Officer Roundtree] could have believed that probable cause existed to arrest" for the crime of disorderly conduct. Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990) (internal quotation marks and citations omitted). Notably, "[t]his standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who unreasonably conclude that probable cause exists." Skop v. City of Atlanta, 485 F. 3d 1130, 1137 (11th Cir. 2007).

Determining qualified immunity in a Section 1983 action is a far lower standard than that of determining guilt in a criminal case. For instance, in Redd v. City of Enterprise, the

AO 72A
(Rev. 8/82)

plaintiffs brought a claim under Section 1983 for violations of both their First and Fourth Amendment rights. 140 F.3d at 1383. While the Eleventh Circuit looked to Alabama law, the court declined to determine whether or not Plaintiffs were guilty of disorderly conduct. See id. at 1382. Instead, the court considered only whether arguable probable cause existed for plaintiffs' arrest for disorderly conduct. Id.

Therefore, the Court must look to Georgia law on disorderly conduct to determine if arguable probable cause existed to arrest Plaintiff. Under Georgia law a person commits the offense of disorderly conduct by acting 1) without provocation 2) using to another in such a person's presence 3) opprobrious or abusive words, which by their very utterance tend to incite an immediate breach of the peace ("fighting words"). O.C.G.A. § 16-11-39(a)(3). An overview of the relevant case law indicates that fighting words are a combination of 1) cursing, 2) yelling, 3) threatening behavior, and 4) conduct in front of multiple people.

Simply insulting a police officer is insufficient for a finding of arguable probable cause. In Merenda v. Tabor, a police officer wrote the plaintiff's daughter a ticket for failing to use a seatbelt properly. 506 F. App'x 862, 864 (11th Cir. 2013). The plaintiff attempted to persuade the officer not to write the ticket, but the officer did so anyway. Id. The

O 72A
(Rev. 8/82)

plaintiff said "this sucks," and as he walked away, muttered, "you're a f__king a__hole." Id. The officer asked the plaintiff to "come here" and when he refused the officer forcibly arrested him. Id. The Eleventh Circuit found that the plaintiff's conduct was insufficient behavior for arguable probable cause. Id.

Disorderly conduct is typically public conduct that raises hostility in the minds of others. In Tucker v. State, 504 S.E.2d 250 (Ga. Ct. App. 1998), the defendant repeatedly cursed at bar patrons. When asked to calm down, the defendant said that he could say whatever the "f_k" he wanted to say. Id. at 251. The Court found that defendant's conduct was sufficient to provoke violence, and indeed did provoke violence in one bystander, who was going to "slap the taste out of his mouth" before officers arrived. Id. Therefore, defendant was found guilty of disorderly conduct. Id. at 254; see also McCarty v. State, 603 S.E.2d 666, 668 (Ga. Ct. App. 2004) (holding defendant's insults toward his girlfriend that she was a "f__king whore" and "b_ch" at convenience store sufficient for disorderly conduct conviction).

The Court stresses that it does not endeavor to decide whether Plaintiff actually committed the offense of disorderly conduct. Instead, the Court determines if Officer Roundtree acted reasonably in determining that Plaintiff may have

O 72A
(Rev. 8/82)

committed the offense. Redd, 140 F.3d at 1383; Fish, 2016 WL 5746264, at *9. Indeed, "arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." Scarbrough v. Myles, 245 F.3d 1299, 1302 (11th Cir. 2001).

The Court notes that Officer Roundtree conducted a month long investigation prior to Plaintiff's arrest. Furthermore, he obtained authorization from a neutral and detached magistrate, Judge Jean Bolin.[4] Dkt. No. 74-18. Officer Roundtree conducted multiple witness interviews, reviewed incident reports, consulted officers who were at the scene, consulted Judge Bolin, and reviewed relevant case law. See generally Dkt. 70. These factors indicate to the Court a high level of diligence by Officer Roundtree in determining arguable probable cause.

More importantly, the evidence Officer Roundtree obtained from his investigation indicates that arguable probable cause existed. The record reflects that Officer Roundtree was provided with accounts from multiple witnesses that Plaintiff was yelling for an extended period. Dkt. No. 19 Ex. WWW-1 at 32:00-44; Dkt. No. 74-6 at 4:1-125; Dkt. 74-16 at 23:1-5; Dkt.

[4] Plaintiff has repeatedly reminded the Court that seeking a magistrate judge's approval alone is insufficient to establish probable cause. Dkt. No. 130-1 p. 1. Indeed, the Court does not "end the inquiry" on that basis alone. Messerschmidt v. Millender, 132 S. Ct. 1235, 1239 (2012).

No. 70 at 75:1-11 Further, he was provided with multiple witness accounts claiming that Plaintiff was repeatedly cursing. Dkt. No. 19 Ex. WWW-1 at 32:00-44; Dkt. No. 74-6 at 4:1-125; Dkt. 74-16 at 23:1-5; Dkt. No. 70 at 75:1-11. Specifically, these witnesses stated that he said some variation of "I can say whatever I goddamn want to say whenever I goddamn want to say it." Dkt. No. 70 at 75:1-11; Dkt. 74-16 at 23:1-5; Dkt. No. 74-6 at 4:1-125.

In addition, multiple witnesses reported that Plaintiff was threatening. Caldwell said that she feared that Plaintiff would become violent, she had an intense confrontation in the hallway with him and, during the meeting, Plaintiff had directed hateful comments toward her. Dkt. No. 19 Ex. WWW-1 at 32:00-44; Dkt. No. 67 at 57:1-12; Dkt. No. 62 at 16:25-17:8. Officer Brown and Officer Davis both indicated that Plaintiff was threatening. Officer Davis noted that Plaintiff "g[ot] right up in [Officer Davis'] face," which caused Davis to "be prepared to fight." Dkt. No. 74-9 at 23:3-4. When Officer Brown arrived on the scene, he believed that there was about to be a fight based upon Plaintiff's conduct. Dkt. No. 74-14 at 15:2-16:20.

Georgia law reflects that yelling, cursing loudly, yelling accusations at individuals, and doing so in front of groups of people are all factors taken into consideration in determining whether arguable probable cause of disorderly conduct exists.

AO 72A
(Rev. 8/82)

See Tucker, 504 S.E.2d at 253-54; McCarty, 603 S.E.2d at 667-68. Therefore, the totality of Plaintiff's conduct, rather than any one individual act, indicates that arguable probable cause existed for his arrest. Plaintiff cites Merenda in support of the proposition that arguable probable cause does not exist. Dkt. No. 77 pp. 17-20. However, Merenda is distinguishable from this case for multiple reasons. In Merenda, curse words were muttered so softly that no one but the police officer could hear them. 506 F. App'x at 864. Here, multiple persons heard Plaintiff yell curse words in public, similar to the situations in Tucker and McCarty. 504 S.E.2d at 253-54; 603 S.E.2d at 667-68.

Plaintiff vigorously denies that he yelled and disputes large portions of the testimony of multiple witnesses. Dkt. No. 102-3 pp. 12-15. Plaintiff cannot, however, survive summary judgment simply by giving his own subjective appraisals of his behavior in contradiction to the overwhelming evidence otherwise. See Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2015). Therefore, Officer Roundtree is entitled to qualified immunity, and his Motion for Summary Judgment will be **GRANTED**. Furthermore, this grant of summary judgment extends to all claims against Chief Howard and the City of Darien as well.

O 72A
(Rev. 8/82)

## II. Plaintiff's Section 1985 Claims Fail

Plaintiff's Section 1985 claims must also fail. In order to state a claim under Section 1985, Plaintiff must show that "1) the defendants reached an understanding or agreement that they would deny the plaintiff one of his constitutional rights, and (2) the conspiracy resulted in an actual denial of one of his constitutional rights." Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1327 (11th Cir. 2015) (emphasis added) (citation omitted). Certainly, Plaintiff may rely on circumstantial evidence to prove the existence of an agreement and Defendants' participation in the alleged conspiracy. See United States v. Houser, 754 F.3d 1335, 1349 (11th Cir. 2014); Grider v. City of Auburn, 618 F.3d 1240, 1260 (11th Cir. 2010) ("Factual proof of the existence of a § 1983 conspiracy may be based on circumstantial evidence.").

Here, Plaintiff relies on the fact that many of the people involved in this case know each other, communicated after the incident, and some parties allegedly have some personal vendetta against him. Dkt. 102-1 pp. 19-25. This evidence at best amounts to "unsupported speculation" regarding a conspiracy and Plaintiff cannot survive summary judgment on this basis. See Cordoba, 419 F.3d at 1181. Therefore, Plaintiff cannot establish a conspiracy occurred and summary judgment will be **GRANTED** in regard to Plaintiff's Section 1985 claims.

O 72A (Rev. 8/82)

**CONCLUSION**

For the reasons set forth above, Defendants' Motions for Summary Judgment (Dkt. Nos. 73, 74, 75) are **GRANTED**. As such, Plaintiff's Partial Motion for Summary Judgment (Dkt. No. 77) is **DENIED**. The Clerk of Court is **DIRECTED** to enter the appropriate judgment and to close this case.

**SO ORDERED**, this 18th day of November, 2016.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)